

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1581-12

**BRIAN SHAWN GILLEY, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### WICHITA COUNTY

PRICE, J., delivered the opinion of the Court in which KELLER, P.J., and MEYERS, WOMACK and COCHRAN, JJ., joined. JOHNSON, J., filed a dissenting opinion. KEASLER, J., filed a dissenting opinion in which HERVEY and ALCALA, JJ., joined.

## O P I N I O N

The appellant was convicted of aggravated sexual assault of a child, and his punishment was assessed by the jury at thirty years' confinement in the penitentiary.[1] On the morning that jury selection was scheduled to begin, the trial court heard argument on the

---

[1] TEX. PENAL CODE § 22.021(a)(1)(B)(ii).

appellant's pretrial motion for a hearing to determine the six-year-old child-complainant's competency to testify. Over the appellant's objection, the trial court decided to conduct its Rule 601(a)(2) competency examination of the child-complainant *in camera*, with the court reporter in attendance but in the absence of the appellant and the attorneys for both sides.[2] Following the examination, the trial court found the child-complainant to be a competent witness.

On appeal, the appellant complained that, by excluding him and his attorney from the competency examination, the trial court violated various constitutional provisions. The court of appeals rejected the appellant's multifarious point of error in a published opinion.[3] We granted the appellant's petition for discretionary review, which was limited to complaining that the trial court violated his Sixth Amendment right to the assistance of counsel at a "critical stage" of the trial proceedings. As it happens, however, this was the one constitutional argument that the appellant raised in his multifarious point of error on direct appeal that the court of appeals did *not* address. Although we do not ordinarily review issues that the court of appeals has not reached, we will, for the reasons that follow, address the

---

2

*See* TEX. R. EVID. 601(a)(2) ("The following witnesses shall be incompetent to testify in any proceeding subject to these rules: . . . Children or other persons who, after being examined by the court, appear not to possess sufficient intellect to relate transactions with respect to which they are interrogated.").

3

*Gilley v. State*, 383 S.W.3d 301 (Tex. App.—Fort Worth 2012).

appellant's Sixth Amendment right-to-counsel claim and affirm the judgment of the court of appeals.

## FACTS AND PROCEDURAL POSTURE

### In the Trial Court

When the trial court proposed to resolve the competency issue by examining the child-complainant in chambers with only the judge, the witness, and the court reporter in attendance, the appellant's counsel objected,[4] complaining that "we are not allowed to be present during that examination and also allowed to examine" the child at that time and invoking "the Sixth Amendment of the United States Constitution, Article 1, Section 10 of the Texas Constitution and Code of Criminal Procedure, Article 1.25[.]"[5] The one right that all of these provisions guarantee in common is the right of confrontation—indeed, that is the only right enumerated in Article 1.25.[6] The appellant shortly elaborated that "the right of

---

[4] Specifically, the appellant's trial counsel objected as follows:

> MR. RASMUSSEN: And Judge, let me go ahead and make objection . . . to that procedure under the Sixth Amendment of the U.S. Constitution, Article 1, Section 10 of the Texas Constitution and Code of Criminal Procedure, Article 1.25, specifically that we're -- we are not allowed to be present during that examination and also allowed to examine the -- the child at that time.
>
> And I think the examination of the child is somewhat discretionary, but I think the right of confrontation would include our right to be present during the examination.

[5] U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. art. 1.25.

[6] *See* TEX. CODE CRIM. PROC. art. 1.25 ("The defendant, upon a trial, shall be confronted with

confrontation would include our right to be present during that examination."[7]  When the appellant requested a running objection, the trial court sought clarification: "And your -- just so it's real clear for the record, you're talking about your lack of right of confrontation." Counsel for the appellant simply replied, "Correct."  Apart from generally invoking both the Sixth Amendment and Article I, Section 10—each of which contains a right-to-counsel provision—the appellant made no specific mention of his right to assistance of counsel at a critical stage during the trial proceedings.  The trial court cannot fairly be expected to have known that the appellant was seeking a ruling on such an objection.  Therefore, *if* the constitutional right to counsel at a critical stage of trial is of a kind that is subject to forfeiture by inaction,[8] then the appellant procedurally defaulted it by failing to make timely objection in the trial court.

---

the witnesses, except in certain cases provided for in this Code where depositions have been taken.").

[7]  The Appellant claims that, because he alluded to "our right to be present" during the competency examination, his objection was sufficient to embrace his constitutional right to the presence and assistance of counsel at any critical stage of trial.  But even if the appellant's objection was sufficient thus to identify *what* the appellant sought—*i.e.*, both his own presence at the competency examination and the presence of his trial counsel—it failed to identify the constitutional right to counsel at a critical stage of trial as the legal basis for his claim.  *See* TEX. R. APP. P. 33.1(a)(1)(A) (objection must "state[] the grounds for the ruling . . . sought . . . with sufficient specificity to make the trial court aware of the complaint").  Here, the only federal constitutional provision in support of "our right to be present" that the appellant's trial counsel expressly invoked was the Confrontation Clause.

[8]  *See* notes 20 & 22, *post*.

## On Direct Appeal

The appellant raised only one point of error on appeal. In that point of error, however, he identified three distinct constitutional bases to argue that the trial court erred to exclude him and his trial counsel from the competency examination. The trial court, he urged, denied him "his right to be present at a critical stage of the proceeding, [to] confront a witness against him[,] and have the assistance of counsel in this process."[9] In describing the appellant's claim on appeal, the court of appeals recognized that the appellant predicated his point of error in part upon the constitutional right to counsel.[10] But, while it thereafter addressed and resolved the appellant's other two constitutional claims, it said no more about his constitutional right-to-counsel claim.[11] Thus, the court of appeals failed to reach any decision with respect to that issue.

## On Discretionary Review

In his petition for discretionary review, the appellant raised one ground for review. On its face, this ground for review was limited to a single legal issue: "Whether an accused's

---

[9] Appellant's Brief on Direct Appeal at 6.

[10] *See Gilley*, 383 S.W.3d at 304 ("Appellant contends that by excluding him and his counsel from the in-camera competency hearing, the trial court violated his rights to attend a critical stage of the proceedings, confront a witness against him, and *have the assistance of counsel in the process*.") (emphasis added).

[11] *Id*. at 306-09.

Sixth Amendment right to counsel is denied if the trial court excludes counsel for the accused from attending a Rule 601 determination of the competency of a child witness?" Thus, it appeared that the appellant would have us review the one constitutional issue that the court of appeals simply did not address.[12] Nevertheless, in the course of his argument, the appellant relied in large measure—albeit analogically—upon the opinion of the United States Supreme Court in *Kentucky v. Stincer*, a case that strictly involves the Sixth Amendment right to confrontation.[13] The appellant also made incidental arguments challenging the court of appeals's resolution of his statute-based arguments.[14] We granted the appellant's petition for discretionary review and allowed briefing on the merits because, despite the facial narrowness of his ground for review, he seemed also to be challenging the court of appeals's resolution of some of the other, non-right-to-counsel issues that were raised and actually resolved on direct appeal.

---

[12] The court of appeals also addressed the appellant's statutory argument that he was entitled to be present during the competency examination, accompanied by his trial counsel, under Rule 601(a)(2) itself, holding that the plain language of the rule requires no such thing. *Id*. at 305-06. In the body of his petition for discretionary review, the appellant argued that this holding with respect to the statute also effectively constituted a holding that the competency examination was not a "critical stage" of trial, and that the appellant therefore suffered no deprivation of his Sixth Amendment right to the assistance of counsel. Petition for Discretionary Review at 4. However, nothing about the court of appeals's statutory analysis disposed of, or purported to dispose of, the appellant's Sixth Amendment right-to-counsel claim.

[13] *See* Petition for Discretionary Review at 6-8 (citing *Kentucky v. Stincer*, 482 U.S. 730 (1987)).

[14] *Id*. at 8-10.

By way of his brief on the merits in this Court, however, and especially during his oral argument, the appellant has now vehemently insisted that his argument on discretionary review is limited to the proposition that he suffered a violation of his constitutional right to the assistance of counsel. He has disclaimed any present reliance upon his right of confrontation. For the first time in his brief on the merits, he has also argued that the court of appeals "sidestepped the issue" of the right to the assistance of counsel and "neither considered nor adequately analyzed the Rule 601 proceeding as a 'critical stage' of the adversarial process."[15] Nevertheless, the appellant does not ask us to remand the cause to the court of appeals.[16] Instead, he continues to urge us to reach the merits of that issue for the first time on discretionary review.

## ANALYSIS

### Justiciability

As a general proposition, this Court will review only the "decisions" of the courts of appeals.[17] There are exceptions to our practice of remanding under such circumstances, however, and when the proper disposition of an outstanding issue is clear, we will sometimes

---

[15] Appellant's Brief on the Merits at 19.

[16] *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that . . . addresses every issue raised and necessary to final disposition of the appeal."); *Menefee v. State*, 287 S.W.3d 9, 18-19 & n.45 (Tex. Crim. App. 2009).

[17] *E.g.*, *Davison v. State*, 405 S.W.3d 682, 691 & n.54 (Tex. Crim. App. 2013).

dispose of it on discretionary review in the name of judicial economy.[18] A remand in this cause would require the court of appeals potentially to address a number of ancillary issues, including: (1) whether it is appropriate to reach the appellant's right-to-counsel argument in light of the fact that it was embedded in a multifarious point of error on appeal;[19] and (2) whether the appellant's right-to-counsel claim is subject to forfeiture by a failure to object at trial, or is, alternatively, a waiver-only right that can be raised for the first time on appeal in the absence of an express waiver on the record.[20]

The appellant made no objection based upon the Sixth Amendment right to counsel

---

[18] *Id*. at 691-92.

[19] *See, e.g.*, *Prihoda v. State*, 352 S.W.3d 796, 801 (Tex. App.—San Antonio 2011, pet. ref'd) ("As an appellate court, we may refuse to review a multifarious issue or we may elect to consider the issue if we are able to determine, with reasonable certainty, the alleged error about which the complaint is made."); *Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010) ("Because appellant bases his single point of error on more than one legal theory, his entire point of error is multifarious. TEX. R. APP. P. 38.1. We will, however, review his arguments in the interest of justice."); George E. Dix & John M. Schmolesky, 43B TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 55:107 (3d ed. 2011).

[20] We have observed that "[q]uestions of procedural default are systemic, meaning that a court of appeals may not reverse a conviction without first addressing any potential issue of procedural default, even *sua sponte*." *Lackey v. State*, 364 S.W.3d 837, 844-45 n.28 (Tex. Crim. App. 2012). In *Marin v. State*, 851 S.W.2d 275, at 278 (Tex. Crim. App. 1993), we observed that the general right to the assistance of counsel is of the waiver-only variety. Moreover, the United States Supreme Court has intimated that the right to counsel at a discrete "critical stage" is lost only when knowingly and intelligently waived. *Iowa v. Tovar*, 541 U.S. 77, 80-81 (2004). Whether the appellant may raise his claim of a deprivation of his constitutional right to counsel at a critical stage of his trial, however, is a question the parties have not previously briefed.

when the trial court excluded his trial attorney from the competency examination.[21] We have held that the right to counsel at a critical stage of the criminal proceedings must be affirmatively waived and cannot be forfeited by inaction alone.[22] If a pretrial competency examination does not constitute a critical stage for Sixth Amendment purposes, however, then the potential implications of the appellant's failure to object to his trial counsel's exclusion on that basis are academic, since the appellant cannot prevail on appeal in any event. And the appellant cites to no case in his brief on the merits in this Court—from any jurisdiction—holding that a pretrial competency examination necessarily constitutes a critical stage. Because we think it clear that the competency examination was not a critical stage of the criminal proceedings against the appellant, in the interest of judicial economy we will resolve the case on that basis without burdening the court of appeals with a remand.

## Critical Stage

The Sixth Amendment right to counsel "extends to all 'critical stages' of the criminal proceeding, not just the actual trial."[23] But "[n]ot every event following the inception of

---

[21]

  *See* note 4, *ante*.

[22]

  *See Oliver v. State*, 872 S.W.2d 713, 716 (Tex. Crim. App. 1994) (an accused does not lose his right to counsel at a critical stage by inaction, but must affirmatively waive it).

[23]

  *Hidalgo v. State*, 983 S.W.2d 746, 752 (Tex. Crim. App. 1999). Of course, the Sixth Amendment right to counsel does not attach until the initiation of adversary judicial proceedings. *Green v. State*, 872 S.W.2d 717, 719 (Tex. Crim. App. 1994). There is no question that such proceedings had begun in the instant case, the trial court having conducted the witness-competency examination on the morning of jury selection and the day before trial on the merits commenced.

adversary judicial proceedings constitutes a 'critical stage' so as to invoke the right to

counsel under the Sixth Amendment."[24]

> In assessing whether a particular stage of the pre-trial proceedings is a "critical" one, "the test utilized by the [Supreme] Court has called for examination of the event in order to determine whether the accused required aid in coping with legal problems or assistance in meeting his adversary." In essence, we must scrutinize any pre-trial event with a view to ascertaining whether presence of counsel is necessary to assure fairness and the effective assistance of counsel at trial[.][25]

Digesting relevant Supreme Court decisions, Professor LaFave has described the examination

of a pretrial event for its criticalness as follows:

> a court must ask: (1) whether the proceeding either (i) had a consequence adverse to the defendant as to the ultimate disposition of the charge which could have been avoided or mitigated if defendant had been represented by counsel at that proceeding; or (ii) offered a potential opportunity for benefitting the defendant as to the ultimate disposition of the charge through rights that could have been exercised by counsel, and (2) whether the adverse consequence could have been avoided, or the lost opportunity regained, by action that subsequently provided counsel could have taken.[26]

Measured by these criteria, we think it evident that the pretrial witness-competency

---

The appellant also invokes Article I, Section 10 of the Texas Constitution, but makes no independent argument that it should be construed any more protectively in the right-to-counsel context than the Sixth Amendment. We therefore decline to reach that issue. *E.g.*, *Barley v. State*, 906 S.W.2d 27, 35-36 (Tex. Crim. App. 1995).

[24] *Green*, 872 S.W.2d at 720.

[25] *Id*. (quoting *United States v. Ash*, 413 U.S. 300, 313 (1973)) (citation omitted).

[26] Wayne R. LaFave, et al., 3 CRIMINAL PROCEDURE § 11.2(b), at 50 (3d ed. Supp. 2012-2013) (citations omitted).

examination that occurred in this case was not a "critical stage" of the appellant's trial mandating the participation of his counsel in order to ensure either the fairness of, or the effectiveness of his counsel at, the subsequent trial.

Rule 601(a)(2) provides that children "shall be incompetent to testify" if, "after being examined by the court, [they] appear not to possess sufficient intellect to relate transactions with respect to which they are interrogated."[27] Under this provision, "[t]he party seeking to exclude the witness from testifying must raise the issue of his competency and shoulders the burden of establishing incompetency."[28] The competency of a child-witness is a preliminary question for the trial court to determine under Rule 104(a) of the Texas Rules of Evidence,[29] and the trial court is not bound by the rules of evidence in making that determination.[30] Besides gauging the sufficiency of the child-witness's cognitive ability to relate relevant facts, as specifically contemplated by Rule 601(a)(2), a trial court may also inquire whether the child-witness possesses the capacity to appreciate the obligations of the oath—or can at

---

[27] TEX. R. EVID. 601(a)(2).

[28] Steven Goode, Olin Guy Wellborn III & M. Michael Sharlot, 1 TEXAS PRACTICE: GUIDE TO THE TEXAS RULES OF EVIDENCE § 601.2, at 643 (3d ed. 2002) (citations omitted).

[29] Id. at 643-44 & n.31 (citing Broussard v. State, 910 S.W.2d 952, 960 (Tex. Crim. App. 1995)).

[30] TEX. R. EVID. 104(a).

least distinguish the truth from a lie.[31] The trial court has discretion to permit the parties to participate in the Rule 601(a)(2) examination, and may even allow the parties themselves to propound the questions, so long as the trial court itself "makes an independent ruling on competency" based on that questioning.[32] But the language of Rule 601(a)(2) certainly does not, on its face, *require* the trial court to permit party participation.[33] And there is no particular reason why it should, since the typical inquiry into a child-witness's capacity to relate facts and appreciate the virtue of veracity is hardly complex.

This is not to say, of course, that a child-witness competency proceeding does not carry the potential for adverse consequences to the defendant. Simply put, if he cannot satisfy his burden to persuade the trial court that the child-witness is incompetent, the child-witness will be allowed to testify against him, often to devastating and determinative effect. The defendant's trial counsel might have been able to prevent the child-witness's testimony

---

[31]

*See* Goode et al., *supra*, at 641-42 (noting that the requirement of former Article 38.06 of the Texas Code of Criminal Procedure that, to be a competent witness, a child must "understand the obligation of an oath[,]" has not been carried over into current Rule 601(a)(2), but that, "[n]evertheless, as a corollary of the oath requirement found in [Texas Rules of Evidence] Rule 603, courts may continue to demand that witnesses understand their responsibility to testify truthfully").

[32]

*Clark v. State*, 558 S.W.2d 887, 890 (Tex. Crim. App. 1977). *Clark* construed the language of former Article 38.06, which, like current Rule 601(a)(2), contained the requirement that the child-witness be "examined by the court." Nevertheless, we held that questioning by the parties could constitute "compliance with the statute" so long as "the court makes an independent ruling on competency based upon an examination by the court, the prosecution or the defense attorney[.]" *Id.*

[33]

Indeed, the court of appeals held it to be consistent with the plain language of Rule 601(a)(2) that the parties could be excluded from the witness competency examination altogether. *Gilley*, 383 S.W.3d at 305-06. We have no occasion to pass on that question today.

altogether by promulgating supplemental questions designed to expose the child-witness's cognitive or truth-telling limitations, or suggesting deficiencies in the trial court's own examination of the child-witness. Moreover, the opportunity for the defendant's trial counsel to question the child-witness at a pretrial competency examination could improve his trial posture by providing some discovery of, and possible impeachment fodder for, the child-witness's later trial testimony—at least to the extent that a trial court opts to allow such questioning as helpful to its free-range Rule 104(a) inquiry whether the child-witness has the sufficient intellect to relate the events that are the subject of the prosecution.

But these bare potentialities cannot serve, by themselves, to establish that the particular Rule 601(a)(2) examination in this case constituted a "critical stage" of the criminal proceedings for Sixth Amendment purposes. We must also ask whether later actions that the appellant's trial counsel took (or could have taken) avoided (or could have avoided) the adverse consequences of the competency examination (*i.e.*, that the child-witness was found to be competent), and whether trial counsel was nevertheless afforded an opportunity to impeach the child-witness at trial with whatever statements she might have made during the competency examination that proves inconsistent with her later trial testimony. We conclude that trial counsel's later opportunities to challenge the child-witness's deficiencies during the trial itself rendered the trial court's competency examination, though it was conducted outside of trial counsel's presence, nonetheless to be a non-critical stage of the criminal proceedings.

At the conclusion of the exclusive *in camera* competency examination, the trial judge immediately returned to the courtroom to announce that he had questioned the child-witness and determined both that she "understands that telling the truth is the correct thing to do," and that she "possesses sufficient intellect" to relate the events she would be called by the State to testify about. The trial judge confirmed that the court reporter had been present, "taking down all that was said[,]" and that "I had the opportunity to talk with [the child-complainant] and ask her questions of my own and also I selected some questions from those submitted by the State and those submitted by the Defendant." The appellant's trial counsel renewed his objection (on confrontation grounds) to this proceeding, and then observed:

> And also, I would state, I don't know -- of course, we weren't there, so I don't know what questions you asked and just an opportunity to review that at a later date when it gets typed up and submit any -- if there's anything questionable there to prepare as part of a new trial hearing if it gets that far or whatever.

The trial court responded, "Okay. All right." So far as the record reveals, however, though it was apparently readily available to him, the appellant never sought to obtain the court reporter's transcript of the competency examination for use at trial. Although the appellant eventually did file a motion for new trial, he did not complain of any irregularity in the conduct of the competency examination among his grounds therefor.

The record thus establishes that the appellant was able to participate to the limited extent that he was allowed to submit questions for the trial judge to ask that the appellant deemed relevant to the competency determination, some of which the trial judge actually

used.[34]  Moreover, because the trial court made sure that the court reporter was present in

chambers to memorialize the competency examination, the appellant's trial counsel was also

afforded the *opportunity* to review a transcript.  He could have used the transcript to evaluate

both the efficacy of the *in camera* examination to ferret out the child-witness's incompetency

(if any), and its utility as impeachment, prior to cross-examining her at trial.[35]  In any event,

trial counsel was given the opportunity to, and did, actually cross-examine the child-witness

during trial.  At that time, he could have asked her questions to test her ability to relate the

relevant events reliably and tell the truth about them, and he could have sought another ruling

on his motion to deem her incompetent.[36]  As the Supreme Court observed in *United States*

---

[34]

There is no particular reason to believe that, had the appellant's trial counsel been allowed to attend the competency examination, the trial court would have permitted him to adduce questions different than or in addition to those he submitted in writing that were actually posed to the child-witness at the *in camera* competency examination.

[35]

Whatever trial counsel's failure to actually review the transcript may portend with respect to his actual effectiveness, that the *opportunity* was available to review the transcript of the competency examination prior to cross-examining the child-witness cuts against a conclusion that the examination itself constituted a critical stage in this case simply because of its potential for generating impeachment material.

[36]

As the Supreme Court has noted in the Sixth Amendment Confrontation Clause context, "the determination of [child-witness] competency is an ongoing one for the judge to make based on the witness' actual testimony at trial."  *Stincer*, 482 U.S. at 740.  And "[i]n Texas, the scope of cross-examination is wide open."  *Felder v. State*, 848 S.W.2d 85, 99 (Tex. Crim. App. 1992).  *See* TEX. R. EVID. 611(b) ("A witness may be cross-examined on any matter relevant to any issue in the case, including credibility.").  Thus, as in *Stincer*, here,

[a]t the close of the [child's] testimony, [the appellant's] counsel, had he thought it appropriate, was in a position to move that the court reconsider its competency ruling[] on the ground that the direct and cross-examination had elicited evidence that the

*v. Ash*, "[i]f accurate reconstruction is possible, the risks inherent in any confrontation [in the absence of counsel for the accused] remain, but the opportunity to cure defects at trial causes the confrontation to cease to be 'critical.'"[37] That trial counsel may not have maximized his opportunities does not mean that the benefits were "irretrievably lost" so as to justify the conclusion that the *in camera* competency examination constituted a critical stage.[38]

The appellant argues that, "in Texas, . . . 'a critical stage' of a criminal proceeding encompasses all *pretrial* proceedings."[39] The only case he cites for this proposition supports no such categorical Sixth Amendment proposition.[40] Beyond that, the appellant draws our

---

young girl[] lacked the basic requisites for serving as a competent witness[].

*Stincer*, *supra*, at 744.

[37]

413 U.S. at 316. Indeed, it is at least marginally relevant to the critical stage determination that neither the appellant's trial counsel *nor the prosecutor* was allowed to attend the competency examination in this case; each side was limited to submitting proposed questions. In *Ash*, the Supreme Court underscored not only the Sixth Amendment concern that the accused not stand alone at any pretrial proceeding "where the results might well settle [his] fate and reduce the trial itself to a mere formality[,]" but also the need to assure that, under those circumstances, he would receive "aid in coping with legal problems or *assistance in meeting his adversary*"—namely, the prosecutor. *Id*. at 310, 313 (emphasis added). Because the prosecutor's involvement in the competency examination was just as limited as the appellant's, there is no danger in this case that the appellant's interests may have been prosecutorially steamrollered.

[38]

*See United States v. Wade*, 388 U.S. 218, 225 (1967) (pretrial proceeding constitutes a "critical stage" if the absence of counsel results in a right or defense that "may be irretrievably lost, if not then and there asserted") (quoting *Hamilton v. Alabama*, 368 U.S. 52, 54 (1961)).

[39]

Appellant's Brief on the Merits at 13.

[40]

*Id*. at 13 n.38 (citing *Adanandus v. State*, 866 S.W.2d 210, 219 n.7 (Tex. Crim. App. 1993). The issue in *Adanandus* was the appellant's *statutory* right to be *personally* present during an "in-

attention, if only by analogy, to the Supreme Court's opinion in *Stincer*.[41] He acknowledges that the issue in that case was whether Stincer's exclusion from a child-witness competency hearing violated his Sixth Amendment right to confront witnesses against him personally, and that Stincer's attorney was present at the hearing—in short, that *Stincer* does not speak directly to the Sixth Amendment right-to-counsel issue in this case. Nevertheless, he argues that there is language in *Stincer* demonstrating that the Supreme Court would regard a child-witness competency examination as a critical stage for Sixth Amendment right-to-counsel purposes. If anything, however, *Stincer* ultimately cuts the other way.

In *Stincer*, the Commonwealth of Kentucky argued that the Sixth Amendment Confrontation Clause was not implicated in child-witness competency hearings because those hearings are not a "stage of trial" in which evidence is presented to the ultimate trier of fact.[42] The appellant relies on the fact that the Supreme Court rejected this distinction on the grounds that a child-competency hearing, even when it occurs in a pretrial setting and outside the presence of the jury, nonetheless "retains a direct relationship with the trial because it

---

chambers meeting [that] was held in appellant's absence between the trial judge, the prosecutor and defense counsel." *Adanandus*, *supra*, at 217. Thus, it does not speak to the Sixth Amendment right to counsel at all, much less does it hold that all pretrial proceedings in Texas must be regarded as critical stages for Sixth Amendment purposes.

[41]   482 U.S. 730 (1987).

[42]   *Id*. at 739.

determines whether a key witness will testify."[43]  We have acknowledged as much today.

But this observation, standing alone, no more suffices to establish that a particular

competency examination constitutes a "critical stage" for Sixth Amendment right-to-counsel

purposes than it sufficed to convince the Supreme Court that Stincer's rights to confrontation

and due process were violated.  As we have already developed, other considerations inform

the "critical stage" analysis, just as other considerations informed the Supreme Court's

ultimate conclusion in *Stincer* that neither the Sixth Amendment Confrontation Clause nor

the Fourteenth Amendment Due Process Clause were violated.[44]   Indeed, similar

considerations led the court of appeals to rule that the appellant likewise suffered no

---

[43]

   *Id*. at 740.

[44]

   Having earlier found that the right to confrontation—or, more specifically, the right to cross-examination that confrontation partly entails—"is essentially a 'functional' right designed to promote reliability in the truth-finding functions of a criminal trial[,]" the Supreme Court in *Stincer* did not regard its analysis as complete with the simple conclusion that the competency hearing had an impact on the conduct of the trial in the sense that it would determine "whether a key witness will testify." 482 U.S. at 737, 740.  Instead, it continued:

> Instead of attempting to characterize a competency hearing as a trial or pretrial proceeding, it is more useful to consider whether excluding the defendant from the hearing interferes with his opportunity for effective cross-examination.  No such interference occurred when respondent was excluded from the competency hearing of the two young girls in this case.

*Id*. at 740.  Similarly, whether a pretrial proceeding should be regarded as a "critical stage" for Sixth Amendment right-to-counsel purposes ultimately depends on "whether presence of counsel is necessary to assure fairness and the effective assistance of counsel" in the *particular* trial.  *Green*, 872 S.W.2d at 720.  Thus, it is insufficient simply to inquire generally whether a category of pretrial proceedings counts as a "critical stage."

deprivation of his rights to confrontation and due process when both he and his trial counsel were excluded from the child-witness competency examination in this case.[45] The appellant has refrained from challenging that ruling today.

## CONCLUSION

We hold that the appellant was not denied his Sixth Amendment right to counsel at a critical stage of the criminal proceedings. Accordingly, we affirm the judgment of the court of appeals.

DELIVERED:      January 15, 2014
PUBLISH

---

[45] *Gilley*, 383 S.W.3d at 306-08.