

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0899-18

### PATRICK JORDAN, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### BOWIE COUNTY

**YEARY, J., filed a dissenting opinion in which KELLER, P.J., joined.**

### <u>DISSENTING OPINION</u>

In our capacity as a discretionary review court, this Court "may . . . review a decision" of the courts of appeals. TEX. CONST. art. 5, § 5(b); *see also* TEX. R. APP. P. 66.1 ("The Court of Criminal Appeals may review a court of appeals' decision in a criminal case[.]"). We do not ordinarily address issues that the court of appeals did not. *Gilley v. State*, 418 S.W.3d 114, 119 (Tex. Crim. App. 2014). That includes issues of harm. *Johnson v. State*, 145 S.W.3d 215, 224 (Tex. Crim. App. 2004). If a court of appeals finds no error, but we hold that error occurred, we usually remand the cause for the court of appeals to

address harm (or whether a harm analysis should even apply, in some instances) for the first time. *Id*. As the Court points out today, we have recognized an exception to this practice that is designed to preserve judicial resources: We will sometimes proceed to resolve the harm issue ourselves when it is plainly evident how that issue should be resolved. Majority Opinion at 9 (citing *Johnson*, 145 S.W.3d at 224).

This case involves a question whether the trial court properly instructed the jury on the law of self-defense as it applies in a prosecution for deadly conduct under Section 22.05(b)(1) of the Texas Penal Code. TEX. PENAL CODE § 22.05(b)(1). Appellant argued that the self-defense instruction submitted in the jury charge was defective in four distinct ways—including its failure to instruct the jury on the law of multiple assailants. The court of appeals rejected all four of Appellant's jury-charge complaints in one fell swoop, by holding that the facts simply did not raise self-defense at all. *Jordan v. State*, 558 S.W.3d 173, 180 (Tex. App.—Texarkana 2018).

Rather than specifically addressing the court of appeals' decision that the facts of the case failed to raise self-defense at all, the Court today analyzes the question whether Appellant is correct that he should have obtained a multiple-assailants instruction. This is understandable because the court of appeals' analysis whether self-defense was raised at all arguably begs the question whether Appellant was entitled to a multiple-assailants instruction. Pointing out that Appellant was convicted of deadly conduct "against" Varley and Crumpton, the court of appeals concluded that the evidence did not show that either of these two individuals personally used deadly force against Appellant. *Id*. But if the law of multiple assailants applies, then arguably it does not matter whether those two individuals had yet themselves used deadly force against Appellant, so long as he might have

reasonably believed that they were acting in concert with Royal to cause him serious bodily injury or death, and that his own use of deadly force was immediately necessary—against any or all of his assailants—to protect himself. For this reason, I do not fault the Court for proceeding to address this issue, since it appears necessary to refute the court of appeals' resolution of the issue it *did* resolve.

I do not agree, however, that it is appropriate for the Court to address the harm issue for the first time in its opinion today. The Court justifies its first-time treatment of the harm question, invoking *Johnson*'s judicial economy rationale, by asserting that the harm in failing to submit a multiple-assailants instruction in this case was "clear." Majority Opinion at 9. The Court claims that, in the absence of a multiple-assailants component to the self-defense instruction, any reliance Appellant may have placed on the law of self-defense was "foreclosed." *Id.* at 14.

But a self-defense instruction was given as to the deadly conduct offense. The Court quotes that instruction in its entirety in footnotes within its opinion. *Id.* at 13 nn. 2 & 3. The self-defense instruction that was given plainly instructed the jury to acquit Appellant of the deadly conduct charge so long as it reasonably believed that his use of deadly force against Royal was a reasonable response to his reasonable perception that Royal was about to use deadly force against him. Had the jury believed that to be the case, it would have been obliged by this instruction to acquit Appellant of deadly conduct—regardless of what it may have believed about the conduct of Varley and Crumpton. An acquittal based upon self-defense was hardly "foreclosed" by this instruction.

In fact, the instruction given incorporated what was undoubtedly the strongest case for self-defense, since Royal was by far the main aggressor in the melee. At the same time,

it did not require the jury to find that Varley and Crumpton were acting in concert with Royal as a predicate to mandating an acquittal for deadly conduct, as a multiple-assailants instruction would have done.[1] In that sense, at least, it was arguably more favorable to Appellant than an actual multiple-assailants instruction would have been.[2]

It is also possible to argue that the jury would have been more likely to believe that Appellant's perception that deadly force was being used against him was reasonable if it had been permitted by the instruction to take into account the conduct of the entire "mob."[3]

---

[1] *See* TEXAS CRIMINAL PATTERN JURY CHARGES: CRIMINAL DEFENSES 31.7, at 156–57 (2018) (setting out a proposed multiple-assailant self-defense instruction and observing that, in order to justify the submission of such an instruction, "[t]he evidence must tend to show that others joined the attack or at least were present pursuant to an agreement to do so").

[2] In essence, the self-defense jury instruction that the trial court gave with respect to the deadly conduct offense operated much like a necessity instruction. It required the jury to acquit Appellant if it determined that his deadly conduct was immediately necessary to avoid the imminent harm he may reasonably have believed Royal was about to inflict upon him. TEX. PENAL CODE § 9.22. It was arguably even more favorable to Appellant than an ordinary necessity instruction, moreover, in that it did not require evidence of the other elements required to establish such a justification. *See id*. § 9.22(2) & (3) (requiring evidence that "the desirability and urgency of avoiding the harm clearly outweighs, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and . . . a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear").

[3] Appellant testified:

> Q      Okay. Were you aware that there were five people following you out of that restaurant?
>
> A      Yes, sir.
>
> Q      You thought you were getting mobbed?
>
> A      Most definitely.
>
> Q      Did you consider all those as assailants?
>
> A      Yes, sir.

4 RR 40–41.

But Royal is the one who punched Appellant's companion, Bryan, and knocked him out. And, according to Appellant's testimony, Royal is the one who then grabbed him, causing him to retrieve the gun from his pocket, chamber a round, and begin shooting. So, adding Varley's and Crumpton's conduct, such as it was, to the mix of potential deadly force arrayed against Appellant might not, at least arguably, have made much of a difference in the jury's response to Appellant's self-defense claim. In any event, the question of harm seems, at least, debatable—not, as the Court would have it, so self-evident as to obviate our usual practice to remand the cause for that analysis.

I would remand this cause, not to the trial court for further proceedings, as the Court does today, *id*. at 19, but to the court of appeals. I would leave it to the court of appeals in the first instance to decide on remand whether the lack of a multiple-assailants instruction was harmful. Should the court of appeals decide that it was harmful, then it would, as this Court does today, remand it to the trial court. But should it decide it was harmless, that court would then be obliged to determine whether any of Appellant's other complaints about the self-defense instruction are meritorious.

I respectfully dissent to reversing the conviction and remanding the cause to the trial court.

FILED:         February 5, 2020
PUBLISH